**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IMMANUEL CHRISTIAN PRICE,<br><br>                    Petitioner,<br><br>v.<br><br>SCOTT KERNAN, Secretary,<br><br>                    Respondent. | Case No.:  16-cv-0485 JAH (DHB)<br><br>**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Petitioner Immanuel Christian Price, a state prisoner proceeding pro se, has filed a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet.") challenging his convictions in San Diego Superior Court case no. SCD249272 for burglary and attempted burglary, in case no. SCD255402 for possession of drugs in a jail, resisting an officer and battery on an officer, and in case no. SCE338346 for spousal rape, corporal injury on a spouse and disobeying a court order.  (Pet., ECF No. 5.)[1]  Price raises two grounds in the Petition.

*///*

---

[1]    Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system, except for lodgments.

The Court has read and considered the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer ("Answer") [ECF No. 25], the Traverse [ECF No. 29], the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **RECOMMENDS** the Petition be **DENIED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Price's convictions are the result of guilty pleas which he did not appeal. The facts of Price's case are therefore taken from the various lodgments in this case.

There are three criminal cases involved in this action. In June of 2013, a home in La Jolla was burglarized and an attempted burglary was committed at another home next door. (ECF No. 30-3 at 7.) Surveillance video was taken of the individual who attempted to burglarize the house and when shown the video, Price's parole officer thought Price might be the person on the video. (*Id.*) Price was arrested and was eventually released on bail. (Lodgment No. 9, ECF No. 26-9 at 56.) He was charged in case no. SCD249272 with one count of burglary and one count of attempted burglary and was alleged to have suffered one prior serious felony conviction, one prison prior conviction, and one prior strike conviction. (Lodgment No. 2, ECF No. 26-2 at 1-4.)

While Price was out of custody on bail, he was arrested after his wife called police and told them Price had beaten her. (Lodgment No. 28, ECF No. 26-28 at 24.) Price was booked into jail on the charges and was subjected to a strip search upon arrival. During the search, Deputy Sheriff Dobson noticed a clear plastic baggie concealed in Price's buttocks. (Lodgment No. 27, ECF No. 26-27 at 5.) Price did not comply with the officer's direction to turn around and put his hands behind his back, and instead reached down, grabbed something from behind him and placed the object in his mouth. (*Id.*) Price ignored commands to spit the object out and officers had to pry his jaws open in order to obtain the object, which turned out to be a baggie of marijuana. (*Id.* at 8.) During the struggle to obtain the baggie, Price kicked a deputy in the groin. (*Id.* at 6.) Price was charged in case no. SCD255402 with one count of resisting an officer, one count of possessing a controlled

substance in jail, and one count of battery on an officer and was alleged to have suffered one prior serious felony conviction, one prior prison conviction, and one strike conviction. (Lodgment No. 10, 26-10 at 31-34.) He was also eventually charged in case no. SCE338346 with spousal rape, corporal injury to a spouse, and disobeying a court order in connection with the assault on his wife. (Lodgment No. 28, ECF No. 26-28 at 24.) The information alleged enhancements for inflicting great bodily injury and committing the offense while on bail. (*Id.*) It also alleged Price had suffered one prior serious felony conviction, one prior prison conviction, and one prior strike conviction. (*Id.*)

Price was represented by deputy public defender Dennis Lainz in his burglary and drug cases, but was pro per in the spousal rape case. Price asked for a *Marsden* hearing on March 21, 2014 in his burglary case. (Lodgment No. 30, ECF No. 26-30.) During the hearing, Price claimed Lainz was not investigating his alibi that he was with his wife at the time of the burglaries. Lainz told the judge he was concerned about basing an alibi defense on Price's wife's testimony because she was the victim in a prior domestic violence case involving Price and because he was aware of the pending domestic violence and spousal rape case being prosecuted against Price in El Cajon. (*Id.* at 13.) Lainz told the judge he wanted to "find out what was going on with the other case prior to going forward to trial on this case." (*Id.* at 15.) The *Marsden* motion was denied. (*Id.*)

While his burglary and drug cases continued to work their way through the criminal justice system, a preliminary hearing was held in the spousal rape case on April 23-25, 2014 in which Price was pro per. (Lodgment No. 25, ECF No. 26-25, Lodgment No. 26, ECF No. 26-26.) Before witnesses were called, the judge presiding over the hearing asked the prosecutor if there was an offer on the case; the prosecutor replied the offer was for Price to plead guilty to the spousal rape charge for an agreed-upon sentence of 11 years – the low term of three years for the spousal rape, doubled because of the strike prior conviction alleged, which added up to six years, plus five years for the alleged serious felony prior conviction for a total of 11 years. (*Id.*) Price rejected the offer. (*Id.*)

///

On June 4, 2014, a status hearing was held in the spousal rape case. (Lodgment No. 6, ECF No. 26-6 at 18-29.) The prosecutor told the judge that after conferring with Price, she was willing to consider a "global settlement" of all three of his cases, but needed to obtain some additional information and speak to Price's attorneys on the drug and burglary cases. (*Id.*)

Price later appeared at a readiness hearing in the spousal rape case on June 26, 2014. (Lodgment No. 22, ECF No. 26-22.) At the hearing, the prosecutor told the judge she had learned Price had been offered a 12-year sentence for a guilty plea in his downtown burglary and drug cases, which Price had rejected. (*Id.* at 1-2.) Although she was open to the possibility of a "global settlement" involving all three of Price's cases, she had not yet had a chance to discuss that possibility with her supervisor, and noted that the previous offer in the spousal rape case had been 11 years. (*Id.* at 1-2.)

At that point, Price claimed Lainz had told him the previous day the prosecution had offered him a 13-year sentence for all three cases and had told him he should speak to the prosecutor on the spousal rape case about it. (*Id.* at 2-5.) The judge tried to explain to Price that based on what Price had told him, the 13-year offer was for the "downtown" cases in which he was represented by counsel and asked the prosecutor what her offer was in the spousal rape case. (*Id.* at 3.) The prosecutor said the offer for the spousal rape case was 11 years, and that there was no global offer for all three cases at that time. (*Id.*) Price was informed his maximum sentence for the spousal rape case was 28 years. (*Id.* at 5.) The prosecutor also told Price and the judge she had not made a global offer to either Price or Lainz the preceding day and that the only offer currently available to Price was for the spousal rape case only for 11 years. (*Id.* 7-8.) Price rejected the offer. (*Id.* at 8.) After a lengthy discussion about discovery, the prosecutor agreed to discuss the possibility of a 13-year offer for all three cases with her supervisor, which she said she thought "would be fine" and "would probably work." (*Id.* at 15-16.) The case was set to return to court the following day for a possible resolution. (*Id.* at 16.)

///

The following day, June 27, 2014, after consultation with supervisors, the prosecution made a global offer of 17 years and eight months for a guilty plea in all three cases, the minimum possible sentence. (Lodgment No. 23, ECF No. 26-23 at 1-2.) Price first said he would take the offer, then rejected it. (*Id.* at 2-3.) The judge tried to convince Price to accept a lawyer, but Price insisted on representing himself. (*Id.* at 3-9.) Price was advised he was facing a maximum sentence of "over 34 years in custody" on the charges he was facing in all three cases. (*Id.* at 5, 10.) At the conclusion of the hearing, the judge noted Price had been warned of his maximum exposure, he understood the nature of the proceedings and was capable of representing himself, and the case was confirmed for trial. (*Id.* at 11.)

On July 18, 2014, Price was in court for a hearing in his spousal rape case on a motion to dismiss pursuant to Penal Code § 995.[2] Price was again asked if he wanted an attorney appointed, and he refused. (Lodgment No. 6, ECF No. 26-6 at 32.) He told the judge he was not ready to go to trial due to discovery and subpoena issues and the judge tried to determine when Price would be ready. (*Id.* at 2-3.) At that point, the prosecutor told the judge she had discovered Price had not one but two prior serious felony convictions and two prior strike convictions and that she was prepared to file an amended complaint alleging the new priors. (*Id.* at 4.) The amended charges dramatically increased the maximum sentence Price was facing to 42 years to life. (*Id.* at 15.) The prosecutor told the judge there was no plea offer based on the new charges. (*Id.* at 14.) Price then argued

---

[2]     Penal Code § 995 provides, in pertinent part:
Subject to subdivision (b) of Section 995a, the indictment or information shall be set aside by the court in which the defendant is arraigned, upon his or her motion, in either of the following cases: . . .
 (2) If it is an information:
        (A) That before the filing thereof the defendant had not been legally committed by a magistrate.
        (B) That the defendant had been committed without reasonable or probable cause…

his motion to dismiss pursuant to Penal Code § 995; the judge denied the motion. (*Id.* at 15-27.) Near the end of the hearing, Price expressed doubts about his own competency.[3] The judge withdrew Price's pro per status, appointed the public defender, stayed the proceedings, and remanded Price for a competency determination. (*Id.* at 30.) Price was found competent on September 3, 2014, and regained his pro per status in the spousal rape case on September 15, 2014. (ECF No. 15-5 at 11; Lodgment No. 28, ECF No. 26-28 at 14.)

On September 16, 2014, Price appeared in court on his drug and burglary cases and made a *Marsden* motion. (Lodgment No. 31, ECF No. 30-4.) During the hearing, Price claimed Lainz had not obtained what Price alleged to be exculpatory evidence and again expressed frustration that Lainz refused to use his wife as an alibi witness. (*Id.* at 6.) Price also alleged Lainz told him the prosecution had offered him a plea deal of 13 years for all three cases, but that when he went to court in his spousal rape case he learned the prosecution had rescinded the deal. (*Id.* at 7-9.) In response, Lainz reiterated he told Price his wife would not be a good alibi witness given she was the victim in the pending spousal rape case and was a victim in a prior domestic violence case involving Price. (*Id.* at 11.)

Lainz also told the judge that at some point, both Price and the prosecutor in the spousal rape case asked Lainz to help resolve all three cases; even though Lainz did not represent Price in the spousal rape case, he agreed to help. (*Id.* at 12.) During these discussions, the prosecutor told Lainz there was a possibility the spousal rape case could be resolved with a 13-year sentence, but Price rejected that offer. (*Id.*) Lainz also recounted how he had warned Price from the beginning that the District Attorney's Office had not yet alleged Price's second strike and that it was important to resolve his cases before the second strike was discovered and alleged. (*Id.* at 13.) Price wanted Lainz to continue to pursue a plea agreement, but before further discussions could occur, the

---

[3] Competency proceedings had been previously initiated in Price's burglary case and Price had been found competent. (ECF No. 15-10 at 30, 15-12 at 28.)

prosecutor filed an amended complaint alleging the second strike and told counsel there would not be any plea offers on the spousal rape case. (*Id.*) The judge eventually granted the *Marsden* motion, and a new attorney was appointed. (*Id.* at 22.)

Price appeared in the spousal rape case again on October 31, 2014 asking for, among other things, specific performance of what he believed to be the 13 year plea offer. (Lodgment No. 24, ECF No. 26-24 at 30-33.) At the conclusion of the hearing, the prosecutor summarized what had occurred in Prices' cases:

> MS. SPITZBERG: Thank you. I do think that the transcripts do accurately reflect what our offers have been to Mr. Price. We did make one global offer, and that offer was about 17 years – I think the offer was 17 years. And that offer was made on June 27th, I believe was the date. Yes, June 27th. Prior to that, it is my impression that Mr. Price is confused or perhaps intentionally misleading the court that there was a global offer made. We have always made an offer on our case and our case alone, and not including the downtown cases, with the exception of that global offer made on June 27th. Previous to that, we had been offering 12 years on our case and our case alone, and had made that clear on the record. Downtown, what I believe they offered – and I was never present, but in my discussions off the record with the deputy district attorney handling those cases, that they were not extending a global offer on their case, with the understanding that our case was the more serious case, with the most exposure at the time. And so our case would be, quote, unquote, the lead case. So they would make an offer on their case and we could make an offer on our case and figure out if there was some way to resolve this. I think they offered somewhere in the 12-year ballpark for just their downtown case. I think 12 years, eight months for just their cases. I don't know if Mr. Price is trying to say that somehow that encompassed both cases, but I just wanted to make a record that there were two separate offers made, you know, continuously out here in the El Cajon case and on the downtown cases, with the exception of June 27th when we did extend a 17-year global offer to the defendant. And it was clearly rejected by him. So with that, I will rest.

(Lodgment No. 24, ECF No. 26-24 at 34-35.)

Ultimately, Price resolved all three of his cases by pleading guilty to burglary, resisting an officer, possessing drugs in jail, and corporal injury on a spouse and admitting his prior convictions. (Lodgment No. 9, ECF No. 26-9 at 7-8, Lodgment No. 12, ECF No.

26-12 at 3-5, Lodgment No. 13, ECF No. 26-13 at 1-5.) He was sentenced to a stipulated sentence of 31 years. (Lodgment No. 14, ECF No. 26-14 at 1-5.)

Price did not file a direct appeal. Instead, he filed a habeas corpus petition in the California Supreme Court in which he alleged the same claims he alleges in the current federal Petition. (Lodgment No. 19, ECF No. 26-19.) The California Supreme Court summarily denied the petition. (Lodgment No. 20, ECF No. 26-20.)

Price filed a habeas corpus Petition in this Court on February 22, 2016, and a First Amended Petition on March 18, 2016. (ECF Nos. 1, 5.) Respondent filed a Motion to Dismiss on August 2, 2016, which was denied on December 22, 2016. (ECF Nos. 15, 23.) Respondent then filed an Answer on January 24, 2017. (ECF No. 25.) Price filed a Traverse on February 17, 2017. (ECF No. 29.)

## III. DISCUSSION

Price argues his trial counsel was ineffective for two reasons. First, he claims counsel was ineffective during plea negotiations. Second, Price contends counsel was ineffective when he failed to properly investigate his case. (Pet. at 6-15.) Respondent contends Price's arguments fail because he has failed to develop a factual record that would support relief, and because the claims fail on the merits. (Answer, ECF No. 25.)

### A. Standard of Review

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state

8

court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (*overruled on other grounds by Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id*., the state court decision will not be "contrary to" clearly established federal law. *Id*. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Andrade*, 538 U.S. at 72.

**B.    Analysis**

Price claims counsel was ineffective for two reasons.  First, he contends counsel was ineffective during plea bargaining because he did not accurately communicate the maximum sentence Price was facing and failed to secure a timely plea bargain, both of which resulted in Price's rejection of a 17-year plea offer.  (Pet., ECF No. 5 at 6-11.) Second, he claims counsel did not properly investigate his spousal rape case prior to the preliminary hearing.  Specifically, Price argues counsel should have presented evidence that the victim had not complained to medical personnel of being sexually assaulted, was drunk and had illicit drugs in her system at the time of the crime and had a criminal record. (*Id.* at 12-15.)

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  In order to be competent, the Supreme Court has held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012).  He must also show he was prejudiced by counsel's errors.  *Id.* at 694.  Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  In the context of plea bargaining, the Court has defined what the prejudice showing must establish:

> [D]efendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.  Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial

court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *Cf. Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

*Id.* at 147.

*Strickland* also requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87. The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.

Price raised his claims in a habeas corpus petition he filed in the California Supreme Court. (Lodgment No. 20, ECF No. 15-20.) The California Supreme Court summarily denied the petition. (Lodgment No. 21, ECF No. 15-21.) Accordingly, this Court must conduct an independent review of the record to determine if the state court's denial of Price's claims were contrary to, or an unreasonable application of, clearly established Supreme Court law. *Himes*, 336 F.3d at 853.

### 1. The Alleged 13-Year Offer

Price claims Lainz told him in June of 2014 that the prosecutor in his spousal rape case had offered him a 13-year sentence for all three of his cases, but when he arrived at court to discuss the offer, it was no longer on the table. (Pet., ECF No. 5 at 7-8.) Price claims counsel was ineffective for failing to secure the 13-year offer. (*Id.* at 9.)

Any claim of ineffective assistance of counsel as to a failure to favorably resolve the spousal rape case fails because Price was pro per in that case at all relevant times. Lainz represented Price only in his burglary case and his discussions with the prosecutor on the spousal rape case were done as a courtesy to Price. (Lodgment No. 31, ECF No. 30-4 at 12.)

*///*

As to Price's allegation that counsel Lainz was ineffective for failing to secure a 13-year offer for all three of Price's cases, there is no evidence in the record, other than Price's self-serving claims, that the prosecution ever offered Price a 13-year sentence for a resolution of all three cases. At a September 16, 2014 *Marsden* hearing in Price's burglary and drug cases, Price explained his understanding of the potential 13-year offer as follows:

> MR. PRICE: Other than that, there was a plea bargain that I had been offered, and the plea bargain – and the plea bargain was for 12 years, eight months. Dennis [Lainz] came and told me that the plea bargain for 13 years. I mean, it's not a huge difference, but at the same time it is a difference. . . .
>
> And not only had he not been accurate about what the deal had been, but we had – we had a conversation when he came in to visit me. I think it was June 23rd or 24th. And when he came in to visit me on the 23rd, *he told me that the deal was going to be 13 years, that instead of the spousal rape charge I would be getting charged with domestic violence and that I would have to plead guilty to the burglary charge over here in this case and that, you know, that was pretty much the deal.*
>
> We got into a conversation about whether or not that was substantial time – or whether or not a counteroffer would be accepted. So I counteroffered – he told me I could, and so I counteroffered eight years. But it was under the agreement that if the prosecution didn't accept the counteroffer, that I would agree – that I did agree to accept the offer – the original offer if the counteroffer wasn't accepted.

(*Id.* at 6-7) (emphasis added).

At the same hearing, Lainz explained the circumstances surrounding the plea bargain:

> MR. LAINZ: In the El Cajon case, Mr. Price chose to represent himself early on. As the cases progressed on similar tracks, Mr. Price, as well as the El Cajon district attorney, contacted me to see if I could help resolve all the cases together, and at some point the district attorney indicated to me that *a 13-year offer could potentially be accepted in the El Cajon case without the spousal rape allegation.* I informed Mr. Price of that, even though that was not my case, and he indicated that he did not want to take that offer.

. . .

[¶] The district attorney had made him an offer based on the spousal rape charge and Mr. Price did not want to plead guilty to the spousal rape charge. So I indicated to him if he wanted to make an offer that did not include the spousal rape charge, he was going to have to make a bigger offer than what they had . . . .

(*Id.* at 19) (emphasis added).

At a June 26, 2014 status hearing on the spousal rape case, the prosecutor told the judge the status of plea negotiations:

MS. SPITZBERG: Well, I mean, we had discussed the possibility of a global settlement. Yesterday is when I found out what – He has got two open downtown cases.

THE COURT: Okay.

MS. SPITZBERG: I learned that they offered 12 years, I believe, for those two cases. I have not had a chance to discuss an offer incorporating that with my supervisor. Our initial offer for just our case had been 11 years, but – Count one plus, I believe, one of the allegations, for an 11 year offer.

THE COURT: Okay.

MS. SPITZBERG: That was rejected. Mr. Price made us an eight year offer to wrap up all three cases. That's not going to work for us.

THE COURT: Yesterday's cases, the downtown cases, was that a stipulated plea of 12?

MS. SPITZBERG: That was an offer that was rejected.

THE COURT: Oh, he rejected?

MS. SPITZBERG: Yes.

THE DEFENDANT: Actually, I didn't. I have a public defender. He offered 13 years. Basically what he told me was that I could, you know, wait until I actually came to court, actually speak with the prosecutor about it.

(Lodgment No. 22, ECF No. 26-22 at 1-2.)

///

Price appears to have misunderstood what the prosecutor was offering. Given the series of events depicted above, it appears the prosecutor's original offer in the spousal rape case was an 11-year sentence in exchange for a guilty plea to the spousal rape charge. Indeed, the prosecutor in the spousal rape case clearly stated on April 23, 2014, the first day of the preliminary hearing that the only offer on the table was for her case only, an 11-year sentence for guilty plea to the spousal rape charge. (Lodgment No. 25, ECF No. 26-25 at 14.) At a June 26, 2014, status conference in the spousal rape case, the prosecutor reiterated that there was an 11-year offer for a guilty plea to the spousal rape charge. (Lodgment No. 22, ECF No. 26-22 at 2.) She also indicated, consistent with Lainz's description of events, that Price had made an eight-year offer for all three cases which the prosecutor had rejected. At some point, Price indicated he did not want to plead guilty to the spousal rape charge, and Lainz suggested that if he wanted to avoid that outcome, he would have to agree to a longer sentence in exchange for a lesser charge. At that point, the prosecutor appears to have agreed to let Price plead guilty to the domestic violence charges instead of the spousal rape charge in exchange for a 13-year sentence, but that offer was for the spousal rape case only and Price would have to plead guilty in his burglary case as well as a separate case. Price rejected that offer.

Despite Price's misunderstanding, he was successful at getting the prosecutor to consider a 13-year sentence for all three cases. At the June 26, 2014 hearing, the prosecutor told Price and the court she would seek approval from her supervisor to offer a global settlement of 13 years for all three cases. (Lodgment No. 22, ECF No. 26-22 at 14-16.) As it turned out, however, the 13-year offer was apparently not cleared by the prosecutor's supervisor because the first official "global" offer in Price's cases came on June 27, 2014 when the prosecution offered Price a sentence of 17 years and eight months for a guilty plea in all three cases. (Lodgment No. 23, ECF No. 26-23 at 1-2.) Price rejected that offer. (*Id.*)

The record shows there were discussions regarding the possibility of resolving Price's three cases for a 13-year sentence, but that possibility never came to pass. There is

16-cv-0485 JAH (DHB)

no persuasive evidence the prosecutor in Price's spousal rape case ever offered Price a plea bargain of a 13-year sentence to resolve all three of his cases. Thus, because there was no 13-year offer, and Price was representing himself at the time the 13-year offer was discussed, Price has not established deficient performance under *Strickland*. *Strickland*, 466 U.S. at 687-88. Nor has he established prejudice. Although a 13-year offer was considered, it was never extended, and thus Price has not established "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147.

### 2. The 17-Year, Eight Month Offer

As discussed above, at the June 26, 2017 hearing on Price's spousal rape case, the prosecutor told the court and Price there was a possibility Price's three cases could be settled for a 13-year sentence, but that she needed to get approval from her supervisor to make such an offer. (Lodgment No. 22, ECF No. 26-22 at 14-16.) She agreed to do so, but told the court she would have to send a colleague to handle it because she was going out of town. (*Id.* at 16.) The following day, June 27, Price appeared at a status conference on his spousal rape case and the prosecutor told the court and Price the offer to resolve all three of his cases was 17 years and eight months, the minimum sentence he could receive. (Lodgment No. 23, ECF No. 26-23 at 1.) Price rejected the offer. (*Id.* at 3.) The judge took pains to advise Price of the potential consequences of his rejection, and tried to get Price to accept the appointment of an attorney. (*Id.* at 3-7.) Specifically, the judge told Price that by representing himself he was "going to get crushed." (*Id.* at 3.) The judge also told Price he was facing a maximum of "over 34 years in custody" were he to go to trial and lose. (*Id.* at 4-5.) At the conclusion of the hearing, the judge made some factual findings:

> THE COURT: Okay. I'm going to make some findings yet again. The findings are as follows:
>
> One, the People have notified you of their offer and what your maximum exposure is. Pursuant to *Alvernaz*, you have been warned.

Two, as I talk to you, sir, you understand the nature of the proceedings. You also understand the nature of these hearings. You have a pretty good grasp on what you're charged with, what you're looking at, and the various cases that you have floating around San Diego County.

As I said yesterday, I find that you are alert, well-oriented, know the nature and consequences of the proceedings. Though I think it's a fool's move, you are capable of representing yourself. I'm going to continue to allow you to do that.

I'm also going to – I'm making a record because some court downtown had previously engaged in 1368 [competency] proceedings. I don't see it at all.

THE DEFENDANT: I have my –

THE COURT: I agree. I don't need to argue with you about it.

Further, I'm going to assign this case to my department for all purposes. If you want your trial on July 21, I'm going to bring a jury in for you. Okay?

THE DEFENDANT: I don't understand.

THE COURT: Well, you want a trial. The negotiations have failed. We are going to have a trial. If you want to represent yourself, fine with me. Okay?

THE DEFENDANT: Okay. We were talking also about the other discovery.

THE COURT: We are going to get that done, sir. You want Mr. Carnessale to be your lawyer or not? We are racking a jury on July 21st.

THE DEFENDANT: No.

THE COURT: Okay. I'll see you on July 21st.

(Lodgment No. 23, ECF No. 26-23 at 10-11.)

At the time the "global offer" of 17 years and eight months was made, Price was representing himself and seeking to resolve all three of his cases. (*Id.* at 1.) He cannot,

16-cv-0485 JAH (DHB)

therefore, establish the first prong of *Strickland*, deficient performance. *Strickland*, 466 U.S. at 687. In addition, he has not established he was prejudiced because he rejected the offer. *Frye*, 566 U.S. at 147.

Price contends he would have accepted the 17-year, eight month offer if he knew he was facing a possible life sentence. (Pet., ECF No. 5 a 9.) After the 17-year, eight month offer was offered and rejected on June 27, 2014, the prosecution discovered Price had an additional prior strike conviction, and, at a July 18, 2014 readiness hearing in the spousal rape case, asked to file an amended complaint alleging the additional prior conviction. (Lodgment No. 6, ECF No. 26-6 at 35-38.) The request was granted, and Price was then facing potential life sentence. (*Id.* at 36.) But as noted above, at the September 16, 2014 *Marsden* hearing, attorney Lainz told the judge he had warned Price about this very possibility. Lainz said he knew Price had an uncharged strike prior, that he "explain[ed] to him since the beginning that he was looking at 25 to life for the residential burglary," and that "he was looking at 25 to life on [the spousal rape] case, even though they had only charged him with one strike." (Lodgment No. 31, ECF No. 30-4 at 12.) Lainz also told the judge as follows:

> MR. LAINZ: I'm just – you know, I have met with him, I don't know, since I've had the case probably between five to 10 times. And it's true, as the court can notice – I mean, Mr. Price is a frustrating individual. I mean, I am – I am patient – you know, maybe I use foul language sometimes, but every time that I talk to Mr. Price, I try to explain to him the seriousness of the situation, and he has – he doesn't want to listen to anyone but himself. So that's been our – that's been our biggest issue; that no matter how much I try to explain to Mr. Price what's going on or that he has two strikes and that if he wants to resolve the cases he probably wants to do it before they find out about the other strikes, he is, for reasons that I have no – I don't understand, is unwilling to listen to anyone but himself. And that's why we're here – that's why he makes the situation – he has made the situation much worse for himself.

(*Id.* at 12-13.)

///

///

Price has not established Lainz was ineffective with regard to the 17-year, eight month offer because he has established neither deficient performance nor prejudice. *Strickland*, 466 U.S. at 687, 694. Lainz knew about Price's second strike and advised him from the beginning he was facing a potential life sentence and therefore he should resolve his cases before the prosecution discovered and charged him with the second strike. Thus, at the time he rejected the 17-year, eight month global offer, Price knew he had a second strike conviction that had not yet been alleged in either the burglary or spousal rape cases, that the prosecution could amend the complaints in those cases at any time to allege the second strike and that he was facing a possible life sentence on each case. He simply chose to take a risk and hold out for a better deal before the second strike was discovered. Unfortunately for Price, that gamble failed.

### 3. Failure to Investigate

Price next claims counsel Tom Carnessale was ineffective because he failed to properly investigate Price's spousal rape case. (Pet., ECF No. 5 at 12-15.) Although Price represented himself throughout most of the spousal rape case, he was represented by Carnessale prior to the preliminary hearing. (Lodgment No. 5, ECF No. 15-5 at 20.) Price claims counsel should have investigated his claims the victim was under the influence of drugs and alcohol the night of the crime, the victim had a prior criminal record, Price's claim that he and the victim had been in a fight but that no sexual activity had occurred and the fact that the victim did not tell paramedics she had been sexually assaulted. (*Id.*) He also contends counsel should have presented this evidence at the preliminary hearing. (*Id.*) To establish prejudice under *Strickland* for failing to investigate, Price must show a reasonable probability that absent counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Under California law, the defense may only present evidence that establishes an affirmative defense, negates an element of the crime, or impeaches the testimony of a witness at a preliminary hearing. Cal. Pen. Code § 866(a) (West 2017). Information about whether the victim was under the influence of drugs or alcohol at the time of the crime,

whether she had a prior criminal record and inconsistencies in her statements to police may have been relevant to her credibility. But Price has not established prejudice under *Strickland* because he has not shown how any further investigation of these topics would have changed the outcome of his case. *Strickland*, 466 U.S. at 694.

In his Petition, Price notes Carnessale told him he did not have any evidence to support Price's contention that the victim was drunk or under the influence of drugs at the time of the assault. Price has provided no further information the allegation was true, what further investigation would have revealed, or how such investigation would have affected the outcome of his case. *Strickland*, 466 U.S. at 687, 694.

As to Price's allegation counsel should have investigated whether the victim had a prior conviction, Price has provided evidence the victim had a juvenile "true" finding for vehicle theft in 1999. (Lodgment No. 6, ECF No. 26-6 at 64.) Even if counsel had investigated and presented evidence of the victim's juvenile conviction at the preliminary hearing, however, there is no likelihood the outcome of his case would have been different. *Strickland*, 466 U.S. at 694. The burden of proof at a preliminary hearing is low. The prosecution must only establish probable cause that a crime has been committed and it was committed by the defendant. Cal. Penal Code § 872. Given the victim's compelling and detailed testimony about the assault at the preliminary hearing, there is no reasonable probability the judge's decision to bind Price over for trial on all charges would not have changed even if counsel had introduced evidence of her 15-year-old prior juvenile conviction. *Strickland*, 466 U.S. at 694.

There is also evidence in the record that the victim denied being sexually assaulted when talking to medical personnel the night of the assault. (*See*, Lodgment No. 9, ECF No. 26-9 at 62-63.) Contrary to Price's claim, however, the issue of the victim's statement to medical personnel was addressed at the preliminary hearing. The victim testified she did not tell emergency or medical personnel she had been sexually assaulted because she did not understand that under the California Penal Code, spousal rape is defined as sexual intercourse "accomplished against the person's will by means of force, violence, duress,

menace, or fear of immediate and unlawful bodily injury on the person or another." (Lodgment No. 25, ECF No. 26-25 at 86; *see also*, Cal. Penal Code § 262(a)(1).) Officer Arnold, who took the victim's initial and subsequent statements, also testified that following the victim's second statement he concluded she had been the victim of spousal rape because she told him she was afraid Price would continue to hurt her if she did not continue to have sex with him. (*Id.* at 186.) Arnold then took the victim for a sexual assault exam. (*Id.*) Price has not established what further investigation counsel could have accomplished and how any investigation would have affected the outcome of his case. *Strickland*, 466 U.S. at 687, 694.

For the foregoing reasons, following an independent review of the record, the Court concludes the state court's denial of Price's claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254. He is not entitled to relief as to his claims.

## IV. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge John A. Houston under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

**IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than <u>**October 20, 2017**</u>, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///
///
///
///
//

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 3, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  September 18, 2017

LOUISA S PORTER
United States Magistrate Judge